# EXHIBIT B

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | FRANK M. PITRE (SBN 100077)<br>fpitre@cpmlegal.com<br>JULIE L. FIEBER (SBN 202857)<br>jfieber@cpmlegal.com<br>**COTCHETT, PITRE & McCARTHY, LLP**<br>San Francisco Airport Office Center<br>840 Malcolm Road<br>Burlingame, CA 94010<br>Telephone: (650) 697-6000<br>Facsimile: (650) 697-0577<br><br>*Attorneys for Plaintiff* |

Superior Court of California
County of Butte
FILED 8/11/2020
Kimberly Flener, Clerk
By _____ Deputy
Electronically FILED

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF BUTTE

| | |
|---|---|
| **RICHARD VARGAS**, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>**CERES ENVIRONMENTAL SERVICES, INC., d/b/a Environmental and Demolition Services Group**, a Minnesota corporation; **THE STATE OF CALIFORNIA DEPARTMENT OF RESOURCES, RECYCLING AND RECOVERY, aka ("CALRECYCLE")**; and **DOES 1** through **10,** inclusive,<br><br>Defendants. | CASE NO. 20CV01591<br><br>**COMPLAINT FOR DAMAGES**<br><br>1) **NEGLIGENCE**<br><br>2) **BREACH OF MANDATORY DUTY (GOV'T CODE § 815.6)**<br><br>3) **DANGEROUS CONDITION OF PUBLIC PROPERTY (GOV'T CODE § 835)**<br><br>4) **INDEPENDENT CONTRACTOR LIABILITY (GOV'T CODE § 815.4)**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

# TABLE OF CONTENTS

PAGE NO.

I. INTRODUCTION ........................................................................................................... 1

II. JURISDICTION AND VENUE ..................................................................................... 2

III. PARTIES ......................................................................................................................... 2

    A. Plaintiff ............................................................................................................... 2

    B. Defendants .......................................................................................................... 2

    C. Unnamed and Doe Defendants .......................................................................... 3

    D. Agency, Concert of Action, and Conspiracy .................................................... 3

IV. STATEMENT OF RELEVANT FACTS ...................................................................... 4

V. CAUSES OF ACTION ................................................................................................... 7

FIRST CAUSE OF ACTION
Negligence ................................................................................................................................. 7

SECOND CAUSE OF ACTION
Breach of Mandatory Duty ....................................................................................................... 8

THIRD CAUSE OF ACTION
Dangerous Condition of Public Property ............................................................................... 10

FOURTH CAUSE OF ACTION
Independent Contractor Liability ........................................................................................... 12

VI. PRAYER FOR RELIEF ............................................................................................... 14

II. JURY DEMAND ........................................................................................................... 14

Plaintiff Richard Vargas ("Richard") brings this action based on his personal injuries and damages. Plaintiff hereby complains of the Defendants named hereinabove, and each of them, as follows:

I. **INTRODUCTION**

1. After the November 2018 Camp Fire, which destroyed the town of Paradise, the State of California undertook the enormous task of cleaning up toxic debris from the fire. This was considered the largest disaster cleanup in state history. The California Department of Resources, Recycling, and Recovery ("CalRecycle") lead that effort. CalRecycle chose three companies, including defendant Ceres Environment Services, Inc. ("Ceres"), as primary contractors for this effort. Ceres was tasked with removal of debris from the unincorporated area outside of Paradise. Collectively, CalRecycle and its contractors removed more than 3.66 million tons of ash, debris, metal, concrete, and contaminated soil, equivalent to twice the amount of debris removed from the World Trade Center site post-9/11.

2. Ceres hired subcontractors for the project, including Garlow Transport (formerly known as Allied Trucking), a trucking company. One of the truck drivers employed by Garlow Transport was plaintiff Richard Vargas. During the summer of 2019, Richard transported hundreds of truckloads of toxic debris from the site. Workers located on site wore protective garments – i.e., Tyvek suits -- and respirators. In contrast, truckers like Richard, who only periodically came onto the site, received no instruction or equipment for respiratory protection. Each time Richard's truck was loaded, dust from the debris entered into the cab. After loading finished, Richard would leave the truck and step out into the dust to cover the load with a tarp. He would repeat this process to unload the debris, which again exposed him to the debris dust. At no time did CalRecycle or Ceres take steps to protect workers like Richard, who only periodically came onto the site from the toxic dust stirred up by their operations.

3. Richard was 40-years old and in excellent health when he started work on the project. However, over the course of the summer, his health deteriorated. In the fall of 2019 he was unexpectedly diagnosed with sarcoidosis, a disabling immune disease linked to exposure to environmental toxics. For example, many workers at the World Trade Center 9/11 cleanup site

subsequently developed sarcoidosis as a result of their exposure to toxins during that cleanup. Richard has become disabled and unable to work as a result of this disease.

## II. JURISDICTION AND VENUE

4. This court has personal jurisdiction over Defendant Ceres because Ceres conducts extensive business in California pursuant to contracts with the State of California, including management of the cleanup project at the Camp Fire site in the County of Butte, State of California. Ceres, doing business as Environmental & Demolition Services Group, was one of three prime contractors for that cleanup.

5. This court is competent to adjudicate this action and the amount in controversy exceeds the jurisdictional minimum of this court.

6. Venue is proper in the County of Butte, State of California, pursuant to Code of Civil Procedure § 395 and Government Code § 955.2, because substantially all of the events, acts, omissions, and/or transactions complained of herein occurred in/or originated from County of Butte, State of California.

## III. PARTIES

### A. Plaintiff

7. Plaintiff Richard Vargas is a natural person who is, and at all times relevant to this Complaint was, a resident of Redding in Shasta County, California. Prior to the incidents at issue, Richard was 40 years old and in good health. He played softball and worked out at a gym several days each week. He jogged 4 to 5 miles regularly on the trail system near his home, and also enjoyed hiking and mountain biking in the Shasta-Trinity recreational areas.

### B. Defendants

8. Defendant Ceres was, and at all relevant times is, a Minnesota corporation registered to do business in California as Environmental and Demolition Services Group, with offices in Butte County. Ceres was a prime contractor to CalRecycle on the Camp Fire debris removal project, in charge of debris removal for the unincorporated area outside of Paradise. To carry out its duties under the contract, Ceres subcontracted with several trucking companies,

including Richard's employer, Garlow Transport. Upon information and belief, CalRecycle required Ceres to be certified for hazardous substance removal in order to qualify for the project.

9. Defendant CalRecycle is, and at all times herein mentioned was, a public entity doing business throughout the State of California, including having regional offices in the cities of Oroville and Biggs, located within Butte County. CalRecycle, and/or its servants, agents, representatives, employees and/or joint venturers implemented, managed, and/or oversaw the debris removal program at the Camp Fire site. This included selecting, supervising, and managing the prime contractors, including Ceres, and their debris removal crews. CalRecycle's duties included daily oversight of contractors, independent testing, direct review and analysis of results, and documentation of every stage of the operations.

### C. Unnamed and Doe Defendants

10. The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff further alleges that each fictitious Defendant is in some manner responsible for the acts and occurrences set forth herein. Plaintiff will amend this Complaint to show their true names and capacities when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible.

### D. Agency, Concert of Action, and Conspiracy

11. At all times herein mentioned, each of the defendants, inclusive, were the agent, servant, employee, partner, aider and abettor, co-conspirator and/or joint venturer of each of the remaining defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, alter ego and/or joint venture, and each defendant has ratified and approved the acts of each of the remaining defendants. Each of the defendants has aided and abetted, encouraged, and rendered substantial assistance to the other defendants in breaching their obligations to Plaintiff as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the defendants acted with an

awareness of his or her primary wrongdoing and realized that his or her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

### IV. STATEMENT OF RELEVANT FACTS

12. After the 2018 Camp Fire, CalRecycle took charge of the enormous task of cleaning up toxic debris from the fire. This was considered the largest disaster cleanup in state history. Collectively, CalRecycle and its contractors removed more than 3.66 million tons of ash, debris, metal, concrete, and contaminated soil, equivalent to twice the amount of debris removed from the World Trade Center site post-9/11.

13. Upon information and belief, CalRecycle's duties included management of the debris removal project, including management of the debris removal crews. CalRecycle directly oversaw the appointment of the prime contractors and managed their operations throughout the cleanup process.

14. CalRecycle selected three companies, including defendant Ceres, as primary contractors for this effort. Ceres was tasked with removing debris from the unincorporated area outside of Paradise.

15. Because the debris was known to be a health hazard, CalRecycle required that Ceres and the other prime contractors be certified for hazardous substance removal. CalRecycle recognized that the nature of the material being handled at the cleanup required added emphasis on safety. Upon information and belief, it conducted daily oversight to make sure operations were safe and compliant with industry standards. In public statements, it asserted that its overarching principles were to establish the safety of its crews, the community, and the environment. Upon information and belief, in doing this, CalRecycle took responsibility for a number of oversight measures and conducted daily safety meetings. Upon information and belief, CalRecycle claims it had an expectation that on-site crews would wear the proper safety equipment, and it required decontamination zones at each site where on-site contractors suited up and suited off. Upon information and belief, CalRecycle's stated intent was that this would help prevent ash from getting into on-site crewmembers' trucks and going with them back home. Upon information and

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

COMPLAINT

EXHIBIT B
BATES 168

4

belief, CalRecycle also required regular truck inspections for the on-site crews conducted in accordance with Department of Transportation standards.

16. Upon information and belief, recognizing the hazardous nature of the debris and the potential that toxins could become airborne during debris removal, CalRecycle set up air monitoring stations around the community to monitor for airborne toxins. Upon information and belief, CalRecycle knew it was important to keep the debris watered down as a way to keep the dust from flying around, and also understood that when debris were hauled away, measures needed to be taken to prevent dust from flying out and further contaminating the area.

17. CalRecycle claims that its oversight processes are "meticulous" because it has managed more than 20 debris removal operation since 2007. Upon information and belief, CalRecycle understood that managing this size of cleanup project would require careful planning and execution.

18. Upon information and belief, the prime contractors, including Ceres, as state certified entities for hazardous substance removal, also understood these obligations to prevent toxins from becoming airborne, and compliance with safety measures was further imposed through the contracts with CalRecycle.

19. Each of the prime contractors, including Ceres, worked with a group of crews, some of which managed the debris on site and some which were tasked with removing the debris. Upon information and belief, CalRecycle instituted special oversight to ensure cleanup operations went according to plan. Upon information and belief, Contractors were held not only accountable to CalRecycle, but they checked each other's work as well.

20. Ceres hired a number of trucking companies to haul debris away from the site to various landfills. Upon information and belief, one of the trucking companies Ceres hired was Garlow Transport. Upon information and belief, Garlow Transport had no authority or control over conditions at the debris removal site. CalRecycle and/or Ceres retained full control over such conditions.

21. Richard has been a trucker since approximately 2001, initially driving light duty delivery trucks. In 2019, he obtained his class A license, which allows him to drive heavy-duty

trucks. On June 1, 2019, he was hired by Garlow Transport as an hourly employee hauling debris for the Camp Fire project.

22. Richard started work on the fire debris cleanup on June 3, 2019. The procedure was that he would drive his truck to the site, where workers would direct him to the loading area. The on-site workers who directed Richard were dressed in hazardous material suits, *i.e.*, Tyvek suits, and wore respirators. No similar protections were provided to Richard, nor was he told that he needed any type of respiratory protection. As the on-site workers loaded debris into Richard's truck, they stirred up clouds of dust, which then came into the Richard's truck through its ventilation system.

23. Once the truck was loaded, Richard would have to step out into the dust to tarp the load before he could leave the site. Richard would then get back into his truck and drive it to the designated waste facility. He would then exit his truck, remove the tarp, and dump the load, which again exposed him to dust.

24. Richard repeated this process for hundreds of loads throughout June and July 2019. With each visit to the debris removal site and each load of debris he hauled, Richard was exposed to toxic dust from the debris. Despite this, none of the on-site personnel from CalRecycle and/or its contractor, Ceres, took steps to warn Richard or ensure that he had appropriate respiratory protection when he was on site or while he was handling the toxic debris. Similarly, CalRecycle and/or its contractor, Ceres, failed to take effective measures to suppress the dust clouds created during the loading of Richard's truck.

25. At the end of July 2019, Richard began experiencing chest pains and eventually was admitted to the hospital. A multitude of tests were performed, including a biopsy of his lungs. It was later determined that he had developed sarcoidosis, a disease associated with workers at the World Trade Center 9/11 site cleanup. Sarcoidosis is an inflammatory disease that can affect multiple organs in the body. There is no cure for the disease. Richard had never previously had any similar type of health problem.

26. Although Richard continued working for a time after his release from the hospital, eventually he had to stop. His last day of work was in December 2019, and he has been

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

COMPLAINT

EXHIBIT B
BATES 170

6

effectively fully disabled since. He continues to suffer, among other things, severe chest pain, difficulty breathing, fatigue and weakness, and emotional distress as a direct result of the sarcoidosis. His doctors have told him he will not get better.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Negligence**
**(Against Defendant Ceres and DOES 1–5)**

27. Plaintiff hereby realleges and incorporates by reference each and every one of the paragraphs above as though fully set forth herein.

28. Ceres was a general contractor retained by CalRecycle to conduct debris removal at the Camp Fire site. Ceres carried out that effort by subcontracting with companies, including Garlow Transport, Richard's employer, to provide trucking services. During the time that Richard was hauling loads of toxic debris from the site, Ceres and Does 1 through 5 maintained control of the site, including the ability to require respiratory protection for workers coming onto the site, and/or to suppress dust at the site.

29. Upon information and belief, Ceres was certified by the State of California for hazardous substance removal, and that certification was required for it to undertake this project.

30. Upon information and belief, as a prime contractor on the site, Ceres was required to comply with regulations to ensure appropriate worker protections, including but not limited to developing respiratory protection plans. *See, e.g.,* 8 CCR Title 8 § 5144.

31. In its role as prime contractor with responsibility for oversight and management at the site and control over debris removal operations at the site, Ceres and Does 1 through 5 had a duty to workers such as Richard who came on site to ensure that they were not exposed to airborne toxins. This duty included, among other things, ensuring that workers coming onto the site, including Richard, had adequate equipment for respiratory protection, and/or ensuring that adequate dust suppression methods were used to avoid airborne toxins, and/or warning said workers of the dangers of and need to avoid exposure to the airborne toxins.

32. Despite this duty, Ceres and Does 1 through 5, and each of them, negligently, carelessly, recklessly, and/or unlawfully failed to protect workers, including Richard, who were

1  hauling toxic debris from the site. This failure included, among other things, exposing Richard to clouds of toxic dust during the loading and unloading of his truck without providing for any form of respiratory protection, and/or taking steps to ensure adequate dust suppression, and/or providing warning of the need to avoid such exposure, and/or developing adequate respiratory protection plans for workers like Richard who came onto the site.

33. As a result of this breach of duty, Richard was exposed to harmful levels of toxins as he hauled hundreds of loads of debris from the Camp Fire site. That exposure in turn caused him to develop sarcoidosis, a medical condition which will be with him for the rest of his life and which has left him disabled and in constant pain and suffering.

34. The wrongful conduct of Ceres and Does 1 through 5, hereinabove alleged, is the direct and legal cause of the injuries to Richard's health, strength, and activity, and continuing injuries to Richard's body and mind, all of which have caused Richard great physical, mental, emotional, and nervous pain and suffering. These injuries have been debilitating to Richard to his general damages in a sum according to proof.

35. By reason of the wrongful conduct of Ceres and Does 1 through 5, Richard has been required to, and continues to, employ physicians and other health care providers to examine, treat and care for his injuries, and has incurred, and will continue to incur, medical and incidental expenses for such examination, treatment rehabilitation and care in an amount according to proof.

36. By further reason of the wrongful conduct of Ceres and Does 1 through 5, Richard has suffered a loss of income and a loss of earning capacity in an amount according to proof.

### SECOND CAUSE OF ACTION
**Breach of Mandatory Duty**
**(Against DEFENDANT CALRECYCLE and DOES 6-10)**

37. Plaintiff hereby realleges and incorporates by reference each and every one of the paragraphs above as though fully set forth herein.

38. CalRecycle and Does 6 through 10 had overall responsibility for management and oversight of debris removal at the Camp Fire site, including oversight, management, selection, and/or supervision of all contractors on the site, including Ceres. CalRecycle and Does 6 through 10 retained control of the site at all times relevant to this Complaint.

39. As the entity in charge of and tasked with oversight of the debris removal effort, CalRecycle and Does 6 through 10 had a mandatory duty to ensure compliance with Cal/OSHA standards, including 8 CCR Title 8 § 5144 (providing guidance for respiratory protection). CalRecycle was required to ensure there was a respiratory protection program in place for all workers, including drivers like Richard, at the debris removal site.

40. At all relevant times, CalRecycle and Does 6 through 10 failed to carry out its mandatory duty to protect workers such as Richard, by, among other things, failing to have in place and/or failing to ensure enforcement of a respiratory protection program for workers coming onto the site, including truckers such as Richard, and/or failing to ensure that workers coming onto the site, including Richard, had adequate equipment for respiratory protection, and/or failing to ensure that adequate dust suppression methods were used to avoid airborne toxins, and/or failing to warn workers, including Richard, of the dangers of and need to avoid exposure to the airborne toxins.

41. As a result of the breach of these mandatory duties by CalRecycle and Does 6 through 10, Richard was exposed to harmful levels of toxic dust as he hauled hundreds of loads of debris away from the Camp Fire site. That exposure in turn caused him to develop sarcoidosis, a medical condition which will be with him for the rest of his life and which has left him disabled and in constant pain and suffering.

42. On January 25, 2020, Plaintiff filed a government claim against CalRecycle for the subject incident, which was rejected on February 19, 2020.

43. The wrongful conduct of CalRecycle and Does 6 through 10, hereinabove alleged, is the direct and legal cause of the injuries to Richard's health, strength, and activity, and continuing injuries to Richard's body and mind, all of which have caused Richard great physical, mental, emotional, and nervous pain and suffering. These injuries have been debilitating to Richard to his general damages in a sum according to proof.

44. By reason of the wrongful conduct of CalRecycle and Does 6 through 10, Richard has been required to, and continues to, employ physicians and other health care providers to examine, treat and care for his injuries, and has incurred, and will continue to incur, medical and

incidental expenses for such examination, treatment rehabilitation and care in an amount according to proof.

45. By further reason of the wrongful conduct of CalRecycle and Does 6 through 10, Richard has suffered a loss of income and a loss of earning capacity in an amount according to proof.

### THIRD CAUSE OF ACTION
### Dangerous Condition of Public Property
### (Against DEFENDANT CALRECYCLE and DOES 6-10)

46. Plaintiff hereby realleges and incorporates by reference each and every one of the paragraphs above as though fully set forth herein.

47. CalRecycle and Does 6 through 10 had overall responsibility for management and oversight of debris removal at the Camp Fire site, including oversight, management, selection, and/or supervision of all contractors on the site, including Ceres. CalRecycle and Does 6 through 10 were responsible for planning, designing, conducting, maintaining, controlling, and/or directing debris removal at the Camp Fire site and retained control of the site at all times relevant to this Complaint.

48. As the entity in charge of and tasked with oversight of the debris removal effort, CalRecycle and Does 6 through 10 had a mandatory duty to ensure compliance with Cal/OSHA standards, including 8 CCR Title 8 § 5144 (providing guidance for respiratory protection). CalRecycle was required to ensure there was a respiratory protection program in place for all workers, including drivers like Richard, at the Camp Fire debris removal site.

49. At all relevant times, CalRecycle and Does 6 through 10 maintained a dangerous condition of public property as herein described based upon their planning, designing, conducting, maintaining, controlling, and/or directing the debris removal at the Camp Fire site.

50. The failure of CalRecycle and Does 6 through 10 to have in place and/or ensure enforcement of a respiratory protection program for workers coming onto the site, including truckers such as Richard, and/or to ensure that workers coming onto the site, including Richard, had adequate equipment for respiratory protection, and/or to ensure that adequate dust suppression methods were used to avoid airborne toxins, and/or to warn workers of the dangers of

1  and need avoid exposure to the airborne toxins, contributed separately and/or in combination to
2  create a dangerous condition at the site, and a reasonably foreseeable risk of the kind of injury and
3  damage that occurred.

4       51.    Pursuant to Government Code sections 835.2 and 840.4, CalRecycle and Does 6
5  through 10 had actual knowledge and/or constructive notice of the dangerous condition, including
6  that exposure to airborne toxins could be injurious to workers coming on site absent proper use of
7  respiratory protection equipment and/or proper dust suppression methods. Despite this,
8  CalRecycle and Does 6 through 10 did nothing to abate the foreseeable risks and concealed
9  dangers to workers like Richard.

10       52.    The failure of CalRecycle and Does 6 through 10 to abate these foreseeable risks,
11  individually and/or collectively, and to warn workers of the concealed hazard posed by airborne
12  toxins at the site, caused workers like Richard to have a false sense of safety in the area, creating
13  the further hazards and impending danger that existed there.

14       53.    As a result of this dangerous condition, Richard was exposed to harmful levels of
15  toxic dust as he hauled hundreds of loads of debris away from the Camp Fire site. That exposure
16  in turn caused him to develop sarcoidosis, a medical condition which will be with him for the rest
17  of his life and which has left him disabled and in constant pain and suffering.

18       54.    On January 25, 2020, Plaintiff filed a government claim against CalRecycle for the
19  subject incident, which was rejected on February 19, 2020.

20       55.    The wrongful conduct of CalRecycle and Does 6 through 10, hereinabove alleged,
21  is the direct and legal cause of the injuries to Richard's health, strength, and activity, and
22  continuing injuries to Richard's body and mind, all of which have caused Richard great physical,
23  mental, emotional, and nervous pain and suffering. These injuries have been debilitating to
24  Richard to his general damages in a sum according to proof.

25       56.    By reason of the wrongful conduct of CalRecycle and Does 6 through 10, Richard
26  has been required to, and continues to, employ physicians and other health care providers to
27  examine, treat and care for his injuries, and has incurred, and will continue to incur, medical and
28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                            EXHIBIT B                         11
                                                          BATES 175

incidental expenses for such examination, treatment rehabilitation and care in an amount according to proof.

57. By further reason of the wrongful conduct of CalRecycle and Does 6 through 10, Richard has suffered a loss of income and a loss of earning capacity in an amount according to proof.

**FOURTH CAUSE OF ACTION**
**Independent Contractor Liability**
**(Against DEFENDANT CALRECYCLE and DOES 6-10)**

58. Plaintiff hereby realleges and incorporates by reference each and every of the paragraphs above as though fully set forth herein.

59. CalRecycle and Does 6 through 10 had overall responsibility for management and oversight of debris removal at the Camp Fire site, including oversight, management, selection, and/or supervision of all contractors on the site, including Ceres. CalRecycle and Does 6 through 10 retained control of the site at all times relevant to this Complaint.

60. CalRecycle and Does 6 through 10 selected Ceres as a general contractor to conduct debris removal at the Camp Fire site. Ceres carried out that effort by subcontracting with companies, including Garlow Transport, Richard's employer, to provide trucking services. During the time that Richard was hauling loads of toxic debris from the site, CalRecycle, acting with its independent contractor Ceres and Does 1 through 10, maintained control of the site, including the ability to require respiratory protection for workers coming onto the site, and/or to suppress dust at the site.

61. Upon information and belief, Ceres was certified by the State of California for hazardous substance removal, and that certification was required for it to undertake this project.

62. Upon information and belief, as a prime contractor on the site, CalRecycle, acting with its independent contractor Ceres and Does 1 to 10, was required to comply with regulations to ensure appropriate worker protections, including but not limited to developing respiratory protection plans. *See, e.g.,* 8 CCR Title 8 § 5144.

63. In its role as prime contractor with responsibility for oversight and management at the site and control over debris removal operations at the site, Ceres and Does 1 through 5 had a

1  duty to workers such as Richard who came on site to ensure that they were not exposed to airborne toxins. This duty included, among other things, ensuring that workers coming onto the site, including Richard, had adequate equipment for respiratory protection, and/or ensuring that adequate dust suppression methods were used to avoid airborne toxins, and/or warning workers of the dangers of and need to avoid exposure to the airborne toxins. CalRecycle and Does 6 through 10, having overall management responsibility and control for the debris removal project, was responsible for ensuring Ceres and Does 1 through 5 fulfilled all such duties.

64. Despite this duty, CalRecycle allowed Ceres and Does 1 through 5, and each of them, to negligently, carelessly, recklessly, and/or unlawfully fail to protect workers such as Richard who were coming onto the site. This failure included, among other things, exposing Richard to clouds of toxic dust during the loading and unloading of his truck without providing for any form of respiratory protection, and/or without taking any steps to ensure adequate dust suppression, and/or without providing any warning of the need to avoid such exposure, and/or without developing adequate respiratory protection plans for workers, including Richard, who came onto the site.

65. As a result of this breach of duty, Richard was exposed to harmful levels of toxins as he hauled hundreds of loads of debris from the Camp Fire site. That exposure in turn caused him to develop sarcoidosis, a medical condition which will be with him for the rest of his life and which has left him disabled and in constant pain and suffering.

66. On January 25, 2020, Plaintiff filed a government claim against CalRecycle for the subject incident, which was rejected on February 19, 2020.

67. The wrongful conduct of CalRecycle and Does 6 through 10, acting both in its own right and through its independent contractor Ceres and Does 1 through 5, hereinabove alleged, is the direct and legal cause of the injuries to Richard's health, strength, and activity, and continuing injuries to Richard's body and mind, all of which have caused Richard great physical, mental, emotional, and nervous pain and suffering. These injuries have been debilitating to Richard to his general damages in a sum according to proof.

68. By reason of the wrongful conduct of CalRecycle and Does 6 through 10, acting

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

COMPLAINT                           13
EXHIBIT B
BATES 177

both in its own right and through its independent contractor Ceres and Does 1 through 5, Richard has been required to, and continues to, employ physicians and other health care providers to examine, treat and care for his injuries, and has incurred, and will continue to incur, medical and incidental expenses for such examination, treatment rehabilitation and care in an amount according to proof.

69. By further reason of the wrongful conduct of CalRecycle and Does 6 through 10, acting both in its own right and through its independent contractor Ceres and Does 1 through 5, Richard has suffered a loss of income and a loss of earning capacity in an amount according to proof.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants Ceres, CalRecycle, and Does 1 through 10, as hereinafter set forth:

1. Compensatory and general damages in an amount according to proof;
2. Past and future medical, incidental, and services expenses according to proof;
3. Past and future loss of earnings and earning capacity according to proof;
4. Pre- and post-judgment interest on all damages as allowed by the law;
5. Costs of suit incurred herein; and
6. For such other and further relief as the Court may deem just and proper.

Dated: August 10, 2020

COTCHETT, PITRE & McCARTHY, LLP

By: _____
FRANK M. PITRE
JULIE L. FIEBER
*Attorneys for Plaintiff*

## II. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: August 10, 2020

COTCHETT, PITRE & McCARTHY, LLP

By: _____
FRANK M. PITRE
JULIE L. FIEBER